Deanna R. Rader (SBN 020448)
Jamie L. Mayrose (SBN 024190)
Rader Mayrose, LLP
812 North Second Avenue
Phoenix, Arizona 85003
Telephone: (602) 384-2292
drader@radermayrose.com
jmayrose@radermayrose.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ariel Armenta, individually and as a representative of a class of participants and beneficiaries on behalf of the Willscot Mobile Mini 401(k) Plan, | Case No.: |
| Plaintiff, | COMPLAINT—CLASS ACTION |
| vs. | |
| WillScot Mobile Mini Holdings Corp; and Does 1 to 10 inclusive, | |
| Defendants. | |

1.    Plaintiff, Ariel Armenta ("Plaintiff"), individually and as a representative of a class of participants and beneficiaries of the WillScot Mobile Mini 401(k) Plan (the "Plan") bring this Employee Retirement Income Security Act of 1974 ("ERISA")[1] action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) and Rule 23 of the Federal Rules of Civil Procedure against Defendants, WillScot Mobile Mini Holdings Corp ("WillScot") and Does 1 to 10 (together, "Defendants"), each in their capacity as a Fiduciary to the Plan,

---

[1] 29 U.S.C. §§1001–1461.

for (1) breach of ERISA's fiduciary duties; and (2) engaging in self-dealing and transactions prohibited by ERISA.

2.      ERISA requires a fiduciary to act "solely in the interest of participants and beneficiaries," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law," *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996), and require fiduciaries to have "an eye single toward beneficiaries' interests." *Pegram v. Herdrich*, 530 U.S. 211, 235, 147 L. Ed. 2d 164, 120 S. Ct. 2143 (2000).

3.      ERISA also mandates that fiduciaries must discharge their fiduciary duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. §§ 1104(a)(1)(D). The Supreme Court has clearly stated that there is "no exemption from this duty . . . ." *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285, 300, 129 S. Ct. 865 (2009).

4.      Instead of loyally and prudently acting in the best interest of Plan participants, Defendants chose to use Plan assets to benefit WillScot, to the detriment of the Plan and its participants, by using millions of dollars of Plan assets to offset WillScot's obligations to make contributions to the Plan. Defendants took this action despite knowing that the Plan document explicitly required them to *first* use the Plan assets for the benefit of Plan participants.

5.      To remedy these fiduciary breaches and ERISA violations, Plaintiff, individually and as representatives of a class of participants and beneficiaries of the Plan, bring this action on behalf of the Plan under 29 U.S.C. § 1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. § 1109(a) to make good to the Plan all losses resulting from each breach of fiduciary duty and to restore to the Plan any profits made through Defendants' use of the Plan's assets. In addition, Plaintiff seeks such other equitable or remedial relief for the Plan as the Court may deem appropriate.

**JURISDICTION AND VENUE**

6.     This Court has exclusive subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq.*

7.     This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and have significant contacts with this District, and because ERISA provides for nationwide service of process.

8.     Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because some or all of the violations of ERISA occurred in this District and Defendants reside and may be found in this District.

**PARTIES**

9.     The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34) that covers eligible employees of WillScot and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1103(a).

10.     Plaintiff Ariel Armenta is a resident of the State of Arizona, was previously employed by WillScot through 2024, and was a participant in the Plan during the class period under 29 U.S.C. § 1002(7).

11.     During the class period, Plaintiff's individual account was charged, and Plaintiff paid, for a share of the Plan's administrative expenses.

12.     Plaintiff has Article III standing to bring this action on behalf of the Plan because she suffered actual injuries through the misallocation of Plan forfeitures by Defendants with regard to the Plan as it relates to her individual 401(k) account. This injury is fairly traceable to Defendants' unlawful conduct in using Plan forfeitures for their own benefit and this harm is likely to be redressed by a favorable judgment providing appropriate equitable relief to Plaintiff and to the class.

13.     Having established Article III standing, Plaintiff may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond her own injuries.

14.    The Plaintiff and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misallocation of Plan forfeitures) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

15.    Having never managed a very large 401(k) plan, Plaintiff, and all participants in the Plan, lacked actual knowledge of how Plan forfeitures should be allocated by the Defendants and also lacked actual knowledge of how Plan forfeitures were used by the Defendants.

16.    WillScot is a Delaware-incorporated company with its principal place of business at 4646 E. Van Buren St., Suite 400, Phoenix, AZ 85008.

17.    WillScot is the Plan sponsor under 29 U.S.C. § 1002(16)(B) and the Plan administrator under 29 U.S.C. § 1002(16)(A) with broad authority over the administration and management of the Plan.

18.    WillScot and the Plan administrator are both named fiduciaries of the Plan, and each exercised discretionary authority and discretionary control over the management and administration of the Plan with respect to the matters alleged herein and were fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A). Hereafter, a person or group of people who exercise authority or control of Plan assets will be referred to as a "Plan Fiduciary" or "Plan Fiduciaries."

19.    The defendants sued by the fictitious names DOES 1 through 10, inclusive, are Plan Fiduciaries unknown to Plaintiff who exercise or exercised discretionary authority or discretionary control with respect to the management or disposition of its assets, or have exercised discretionary authority or discretionary responsibility in the administration of the Plan and are responsible or liable in some manner for the conduct alleged in this Complaint. Plaintiff will amend this Complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.

## FACTS APPLICABLE TO ALL COUNTS

20.     Under ERISA, anyone who exercises discretion or control over plan assets, including the Plan Sponsor, is a fiduciary.

21.     In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

22.     As an individual account defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

23.     Throughout the class period, the Plan paid direct and/or indirect compensation for services ranging from, among others, recordkeeping and administration, accounting, consulting, trustee services, loan processing, participant communications, investment management services, and legal services. Hereafter, the payment for services from Plan assets shall collectively be referred to as "Administrative Expenses."

24.     The use of Plan assets to pay Administrative Expenses from the accounts of Plan participants reduces the funds available to Plan participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

25.     Throughout the class period, the Plan has been funded by a combination of wage withholdings by Plan participants and WillScot matching contributions, each of which is deposited into the Plan's trust fund and allocated to individual participant accounts.

26.     Throughout the class period, the terms of the Plan require WillScot to make matching contributions to the Plan based on each participant's contributions.

27.     WillScot must pay all matching contributions that have accrued throughout a calendar year to the Plan trustee within a reasonable period of time after the end of the prior calendar year.

28.     Upon their deposit into the Plan's trust fund, all participant contributions and WillScot contributions become assets of the Plan.

29.     Under the terms of the Plan, participants are immediately vested in their own contributions, as well as any actual earnings thereon. Participants are vested in WillScot matching contributions and any actual earnings thereon based on various schedules dependent on their employer group, typically ranging from four to six years before being fully vested.

30.     To the extent a participant is not 100% vested upon termination of employment, the participant forfeits the value of WillScot contributions and any actual earnings thereon (hereafter, "Forfeited Plan Assets") in his or her account on the earlier of the date the participant takes a distribution of his or her vested interest in the Plan or the date the participant incurs a five-consecutive-year break in vesting service (within the meaning of the Plan document).

31.     Under the terms of the Plan document, the Plan Fiduciaries were to use Forfeited Plan Assets to pay Administrative Expenses, and if "any forfeitures [were] not used to pay administrative expenses under the Plan," to then reduce WillScot's matching contribution obligation.

32.     Consistent with the Plan's mandate, the Plan's summary plan description ("SPD") expressly states that Forfeited Plan Assets are "retained in the Plan and may *first* be used to pay administrative expenses," and that "*any remaining amounts* will be used to reduce future Employer contributions payable under the Plan." (emphasis added).

33.     Accordingly, under the terms of the Plan document, the Plan Fiduciaries did not have discretion related to the use of Forfeited Plan Assets.

34.     Under ERISA, when making decisions regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S.C. § 1104 (a)(1)(D) to discharge their duties "in accordance with the documents and instruments governing the plan . . . ."

35. Even if the Plan did not require Forfeited Plan Assets to be first used for the benefit of Plan participants (which it does), the Plan Fiduciaries clearly had discretion to use the Forfeited Plan Assets to pay Administrative Expenses or reduce WillScot's matching contribution obligation under both the Plan and ERISA. *See* 29 U.S.C. § 1002(34) (Plan Fiduciaries have discretion to allocate "forfeitures of accounts of other participants" to participants).

36. Under ERISA, when making decisions regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S. Code § 1104 to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries **and defraying reasonable expenses** of administering the plan.

37. Yet, throughout the class period, the Defendants consistently did not use all Forfeited Plan Assets to offset Administrative Expenses *prior to* using the Forfeited Plan Assets to reduce Defendant's contractually obligated contributions to the Plan, resulting in a reduction in the benefits available to Plan participants.

38. Instead, the Plan Fiduciaries have consistently chosen to utilize a significant portion of the Forfeited Plan Assets to benefit WillScot by reducing Defendant's contractually obligated contributions to the Plan and paying Administrative Expenses from Plan assets other than Forfeited Plan Assets.

39. During 2019, a minimum of $581,269 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Administrative Expenses or allocate to the accounts of eligible Plan participants.

40. During 2019, instead of using the Forfeited Plan Assets to reduce Administrative Expenses or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants, the Plan Fiduciaries caused Plan participants to pay a minimum of $215,659 in Administrative Expenses through deductions from the accounts of Plan

participants and also caused Plan participants to pay other Administrative Expenses indirectly.

41.    During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $581,269 in Forfeited Plan Assets to offset WillScot's contribution obligation prior to offsetting all Administrative Expenses with the Forfeited Plan Assets or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants.

42.    In the alternative, during 2019, the terms of the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Plan assets and the Plan Fiduciaries exercised that discretion in a manner that benefited WillScot at the expense of the Plan and Plan participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan participants accounts, and instead using the Forfeited Plan Assets to reduce WillScot's contractually obligated contributions.

43.    Moreover, on December 31, 2019, unallocated Forfeited Plan Assets were $291,205.

44.    During 2019, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $291,205 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $291,205 on December 31, 2019.

45.    During 2020, a minimum of $618,823 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Administrative Expenses or allocate to the accounts of eligible Plan participants.

46.    During 2020, instead of using the Forfeited Plan Assets to reduce Administrative Expenses or allocating the Forfeited Plan Assets to the accounts of eligible plan participants, the Plan Fiduciaries caused Plan participants to pay a minimum of $299,375 in Administrative Expenses through deductions from the accounts of Plan

participants and also caused Plan participants to pay other Administrative Expenses indirectly.

47.    During 2020, the Plan Fiduciaries, exercised discretion over, and control of, Plan assets when deciding to use $618,823 in Forfeited Plan Assets to offset WillScot's contribution obligation prior to offsetting Administrative Expenses with the Forfeited Plan Assets or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants.

48.    In the alternative, during 2020, the terms of the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Plan assets and the Plan Fiduciaries exercised that discretion in a manner that benefited WillScot at the expense of the Plan and Plan participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan participants, and instead using the Forfeited Plan Assets to reduce WillScot's contractually obligated contributions.

49.    Moreover, on December 31, 2020, unallocated Forfeited Plan Assets were $425,017.

50.    During 2020, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $425,017 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $425,017 on December 31, 2020.

51.    During 2021, a minimum of $204,201 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Administrative Expenses or allocate to the accounts of eligible Plan participants.

52.    During 2021, instead of using the Forfeited Plan Assets to reduce Administrative Expenses or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants, the Plan Fiduciaries caused Plan participants to pay a minimum of $204,201 in Administrative Expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Administrative Expenses indirectly.

53.     During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $204,201 in Forfeited Plan Assets to offset WillScot's contribution obligation prior to offsetting Administrative Expenses with the Forfeited Plan Assets or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants.

54.     In the alternative, during 2021, the terms of the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Plan Assets and the Plan Fiduciaries exercised that discretion in a manner that benefited WillScot at the expense of the Plan and Plan participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan participants, and instead using the Forfeited Plan Assets to reduce Defendant's contractually obligated contributions.

55.     Moreover, on December 31, 2021, unallocated Forfeited Plan Assets were $132,602.

56.     During 2021, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $132,602 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $132,602 on December 31, 2021.

57.     During 2022, a minimum of $386,273 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Administrative Expenses or allocate to the accounts of eligible Plan participants.

58.     During 2022, instead of using the Forfeited Plan Assets to reduce Administrative Expenses or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants, the Plan Fiduciaries caused Plan Participants to pay a minimum of $386,273 in Administrative Expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Administrative Expenses indirectly.

59.     During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when deciding to use $386,273 in Forfeited Plan Assets to offset WillScot's

contribution obligation prior to offsetting all Administrative Expenses with the Forfeited Plan Assets or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants.

60.    In the alternative, during 2022, the terms of the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Plan assets and the Plan Fiduciaries exercised that discretion in a manner that benefited WillScot at the expense of the Plan and Plan participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan participants, and instead using the Forfeited Plan Assets to reduce WillScot's contractually obligated contributions.

61.    Moreover, on December 31, 2022, unallocated Forfeited Plan Assets were $38,521.

62.    During 2022, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $38,521 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $38,521 on December 31, 2022.

63.    During 2023, a minimum of $485,016 in Forfeited Plan Assets was available to the Plan Fiduciaries to use to pay Administrative Expenses or allocate to the accounts of eligible Plan participants.

64.    During 2023, instead of using the Forfeited Plan Assets to reduce Administrative Expenses or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants, the Plan Fiduciaries caused Plan participants to pay a minimum of $474,086 in Administrative Expenses through deductions from the accounts of Plan participants and also caused Plan participants to pay other Administrative Expenses indirectly.

65.    During 2023, the Plan Fiduciaries, exercised discretion over, and control of, Plan assets when deciding to use $485,016 in Forfeited Plan Assets to offset WillScot's contributions obligation prior to offsetting all Administrative Expenses with the Forfeited

Plan Assets or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants.

66.    In the alternative, during 2023, the terms of the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Plan assets and the Plan Fiduciaries exercised that discretion in a manner that benefited WillScot at the expense of the Plan and Plan participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan participants, and instead using the Forfeited Plan Assets to reduce WillScot's contractually obligated contributions.

67.    Moreover, on December 31, 2023, unallocated Forfeited Plan Assets were $567,135.

68.    During 2023, the Plan Fiduciaries exercised discretion over, and control of, Plan assets by failing to use unallocated Forfeited Plan Assets of $567,135 in a timely fashion for the exclusive benefit of Plan participants to avoid having unallocated Forfeited Plan Assets of $567,135 on December 31, 2023.

69.    Under the terms of the Plan and the provisions of ERISA, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets when directing the use of Forfeited Plan Assets.

70.    Under the terms of the Plan and the provisions of ERISA, throughout the class period, the Plan Fiduciaries improperly, disloyally, and imprudently failed to follow the terms of the Plan when directing the use of Forfeited Plan Assets.

71.    Additionally, throughout the class period, the Plan Fiduciaries improperly, disloyally, and imprudently exercised discretion when deciding to use Forfeited Plan Assets to reduce employer contributions.

72.    As described in detail above, throughout the class period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce employer contributions was, all else being equal, in the best interest of WillScot because that option decreased WillScot's own contribution costs.

73. Similarly, as described in detail above, throughout the class period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce employer contributions prior to paying Administrative Expenses or allocating the Forfeited Plan Assets to the accounts of eligible Plan participants reduced the value of Plan assets and the accounts of Plan participants and the benefits available to Plan participants.

74. As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan Assets when directing the use of Plan participants' accounts to pay Administrative Expenses to service providers.

75. There are no facts or circumstances throughout the class period that make discretionary decisions to use Forfeited Plan Assets to reduce WillScot's contribution obligation consistent with discharging their duties with respect to the Plan *solely* in the interest of the Plan participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan.

76. As described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan assets and consistently and reflexively chose to use the Forfeited Plan Assets for their own exclusive interest, to the detriment of the Plan and Plan participants, by allocating forfeitures toward reducing WillScot's contribution obligation to the Plan while enabling WillScot to maintain its discretionary contributions as an employee benefit.

77. While Defendants benefitted, the Plan and its participants and beneficiaries suffered. If Defendants decided throughout the class period to use Forfeited Plan Assets to defray the reasonable expenses of administering the Plan or allocated the forfeitures back to eligible participants, the value of the Plan and the value of the participants' individual accounts would have been greater, thereby providing greater retirement benefits to Plan participants and beneficiaries.

13

## CLASS ACTION ALLEGATIONS

78.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

79.    In acting in her representative capacity for the Plan, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the WillScot Mobile Mini 401(k) Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning February 4, 2019, and running through the date of judgment.

80.    The class includes over 6,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

81.    There are questions of law and fact common to this class pursuant to Federal Rule of Civil Procedure 23(a)(2) because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant. Thus, common questions of law and fact include but are not limited to the following:

> a.    Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);
>
> b.    Whether Defendants breached their duty to follow the terms of the Plan;
>
> c.    Whether Defendants breached their fiduciary duties to the Plan with respect to their management and allocation of Plan assets;
>
> d.    Whether Plan Fiduciaries engaged in prohibited transactions with Plan assets;
>
> e.    What are the losses to the Plan resulting from each alleged breach of ERISA; and
>
> f.    What Plan-wide equitable and other relief the Court should impose to remedy Defendants' alleged breaches.

82.     Plaintiff's claims are typical of the claims of the class pursuant to Federal Rule of Civil Procedure 23(a)(3) because Plaintiff was a participant during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

83.     Plaintiff will adequately represent the class pursuant to Federal Rule of Civil Procedure 23(a)(4) because she was a participant in the Plan during the class period, has no interest that conflicts with the class, is committed to the vigorous representation of the class, and has engaged experienced and competent lawyers to represent the class.

84.     Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

85.     Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

86.     Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the class.

## COUNT I
### Breach of the Duty to Follow Terms of the Plan Document
### (29 U.S.C 1104(a)(1)(D))

87.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

88.    As alleged herein, 29 U.S.C. 1104(a)(1)(D) imposes a fiduciary duty to act in accordance with the Plan documents and instruments governing the Plan.

89.    The Plan required Defendants to use the Forfeited Plan Assets to pay Administrative Expenses prior to using Forfeited Plan Assets to reduce WillScot's required contributions. Defendants failed to discharge their duty to act in accordance with the Plan document by using Forfeited Plan Assets to reduce employer contribution obligations in violation of the explicit terms of the Plan.

90.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan and class suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty to follow the terms of the Plan document.

91.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties, knew of the breach by the other Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

92.    Plaintiff has suffered losses as a direct result of the Defendants' breach of their fiduciary duty to follow the terms of the Plan document.

**COUNT II**
**Breach of the Duty of Loyalty**
**(29 U.S.C. 1104(a)(1)(A))**

93.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

94.     When exercising discretion and control over Plan forfeitures and using them to reduce WillScot's contribution obligation, the Plan Fiduciaries considered the best interest of WillScot as opposed to participants, in violation of ERISA.

95.     When improperly exercising discretion and control over Forfeited Plan Assets and failing to use them to defray the reasonable costs of administering the Plan or allocating them back to the accounts of eligible Plan participants, the Plan Fiduciaries considered the best interests of WillScot, as opposed to Plan participants, in violation of ERISA.

96.     When exercising control over Forfeited Plan Assets, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan, in violation of ERISA.

97.     As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan and class suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

98.     Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants, and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

99.    Plaintiff and the class have suffered losses as a direct result of the Defendants' breach of their duty of loyalty.

**COUNT III**
**Breach of the Duty of Prudence**
**(29 U.S.C. 1104(a)(1)(B))**

100.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

101.    When exercising discretion and control over Plan forfeitures and using them to reduce WillScot's contribution obligation, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan, in violation of ERISA.

102.    When improperly exercising discretion and control over Forfeited Plan Assets, and failing to use them to defray the reasonable costs of administering the Plan or allocate them back to the accounts of eligible plan participants, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan, in violation of ERISA.

103.   When deciding how to allocate Forfeited Plan Assets, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by alternatives under both ERISA and the Plan document, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the Forfeited Plan Assets to reduce the WillScot's own contribution expenses, as opposed paying Administrative Expenses or for other purposes allowable under ERISA, was in the best interest of the Plan's participants or was prudent, and failed to **solely** consider which alternative would promote the **exclusive purpose of providing benefits to Plan participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan, in violation of ERISA.

104.   By refusing to use Forfeited Plan Assets to eliminate Administrative Expenses that were instead charged to participant accounts, and instead deciding to use these Plan assets to reduce the WillScot's own contribution expenses, Defendants imprudently caused the value of the Plan's assets to decrease by causing Plan participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited Plan Assets to pay Administrative Expenses.

105.   Had the Plan Fiduciaries conformed with the minimum standard of care required under ERISA, the Plan Fiduciaries would not have used Forfeited Plan Assets to reduce WillScot's contribution obligation.

106.   Alternatively, had the Plan fiduciaries conformed with the minimum standard of care required under ERISA, they would have used Forfeited Plan Assets to defray reasonable expenses of administering the Plan.

107.   Plaintiff and the class have suffered losses as a direct result of the Defendants' breach of their duty of prudence.

**COUNT IV**
**Prohibited Transactions/ Self-Dealing**
**(29 U.S.C. 1106(b)(1))**

108.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

109.    29 U.S.C. § 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

110.    Defendants violated this prohibition in their management and control of Forfeited Plan Assets in the Plan. By allocating these Plan assets toward offsetting WillScot's contributions, thereby saving WillScot millions of dollars in contribution expenses, Defendants dealt with the assets of the Plan in their own interest and for their own account.

111.    As a result of this prohibited conduct, Defendants caused the Plan and class to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and lost earnings on those assets.

112.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim and to restore to the Plan all assets and profits obtained through the use of Plan assets, and each is subject to other equitable or remedial relief as appropriate.

**COUNT V**
**Prohibited Transactions**
**(29 U.S.C. 1106(a)(1))**

113.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

114.    29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such

transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

115. Defendants are parties in interest, as that term is defined under 29 U.S.C. § 1002(14), because they are Plan Fiduciaries and because WillScot is the employer of Plan participants.

116. When Defendants elected to use Forfeited Plan Assets as a substitute for future employer contributions to the Plan, thereby saving WillScot millions of dollars in contribution expenses, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or use of Plan assets by or for the benefit of a party in interest.

117. As a result of these prohibited transactions, Defendants caused the Plan and class to suffer losses in the amount of the Plan assets that were substituted for employer matching contributions and lost investment returns on those assets.

118. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim and to restore to the Plan all assets and profits obtained through the use of Plan assets, and each is subject to other equitable or remedial relief as appropriate.

## **PRAYER FOR RELIEF**

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated participants and beneficiaries, respectfully requests that the Court:

- find and declare that Defendants have breached their fiduciary duties and engaged in prohibited conduct and transactions as described above;

- find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation

of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;

- order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;

- determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;

- order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

- remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

- surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive and/or in violation of ERISA;

- certify the class, appoint Plaintiff as class representative, and appoint Chirinos Law Firm PLLC and Rader Mayrose LLP as class counsel;

- award to Plaintiff and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

- order the payment of interest to the extent it is allowed by law; and

- grant other equitable or remedial relief as the Court deems appropriate.

Dated this 5th day of February, 2025.

///

1

**RADER MAYROSE LLP**

2

By: s/ Deanna R. Rader

3

Jamie Mayrose, Bar No. 024190

4

Deanna R. Rader, Bar No. 020448
812 N 2nd Ave

5

Phoenix, AZ 85003-1404

6

Maricopa County
Telephone: (602)384-2292

7

jmayrose@radermayrose.com

8

drader@radermayrose.com

9

**CHIRINOS LAW FIRM PLLC**

10

Tulio D. Chirinos (*Pro Hac Vice* forthcoming)

11

370 Camino Gardens Blvd., Ste 106

12

Boca Raton, FL 33432
Telephone: (561) 299-6334

13

tchirinos@chirinoslawfirm.com

14

**CHIRINOS LAW FIRM PLLC**

15

Jenny M. Lewis (*Pro Hac Vice* forthcoming)

16

1323 North Blvd.

17

Houston, TX 77006
Telephone: (832) 466-5575

18

jlewis@chirinoslawfirm.com

19

*Attorneys for Plaintiff and Proposed*

20

*Class*

21

22

23

24

25

26

27

28