**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ariel Armenta,<br><br>    Plaintiff,<br><br>v.<br><br>WillScot Mobile Mini Holdings Corporation, et al.,<br><br>    Defendants. | No. CV-25-00407-PHX-MTL<br><br>**ORDER** |

Plaintiff Ariel Armenta, individually and as a representative of a class of participants and beneficiaries of the WillScot Mobile Mini 401(k) Plan (the "Plan"), brings this action against Defendant WillScot Mobile Mini Holdings Corporation ("WillScot"),[1] fiduciary to the Plan, for breach of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). (Doc. 1 ¶¶1-5.)

WillScot filed this instant motion to dismiss (Doc. 14), claiming that Armenta's Complaint fails to state a claim as required by Rule 12(b)(6), Fed. R. Civ. P. (Doc. 14.) The motion is fully briefed. (Docs. 14, 18, 20.) For the foregoing reasons, the Court will grant in part and deny in part WillScot's motion to dismiss.[2]

---

[1] Defendant clarifies in its motion to dismiss that the proper plan is WillScot 401(k) and that "WillScot Holdings Corporation is not the Plan Sponsor and Administrator, but rather is the ultimate parent company of the Plan Sponsor and Plan Administrator, Williams Scotsman, Inc.," which will need to be amended if Armenta's Complaint survives. (Doc. 14 at 2 n.1.) Armenta does not contest these assertions. (*See* Doc. 18.) To avoid confusion, the Court assumes the facts in the Complaint as true, *see Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009), and these discrepancies do not affect the Court's analysis.

[2] The Court finds that oral argument will not assist in the resolution of the motion. *See* LRCiv. 7.2(f).

## I. BACKGROUND

The following facts are taken from the allegations alleged in the Complaint (Doc. 1) and documents properly subject to judicial notice.[3] The Court accepts these as true for this motion to dismiss. *See Cousins*, 568 F.3d at 1067.

The Plan is a defined contribution retirement plan and sponsored and administered by WillScot. (Doc. 1 ¶¶ 9, 17.) ERISA governs the administration of employer-sponsored benefit plans and "protect the interests of the participants in these plans and their designated beneficiaries and [provides] employers with uniform guidelines and rules regarding the administration of benefit plans." *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111 (9th Cir. 2006). "The plan administrator is a fiduciary charged with the duty to administer the benefit plan in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA." *Id.* (citation modified).

The Plan incurs administrative expenses for services such as recordkeeping, accounting, legal services, and other services related to administering the Plan. (Doc. 1 ¶ 23.) The Plan was and is funded by a combination of wage withholdings by Plan participants and WillScot matching contributions. (*Id.* ¶ 25.) WillScot paid matching contributions based on the participant's contributions, which were accrued throughout a calendar year to the Plan trustee. (*Id.* ¶¶ 26-27.) Once deposited into the Plan's trust fund, the contributions become assets of the Plan. (*Id.* ¶¶ 28.)

Plan participants become immediately vested into their own contributions and any earnings from these contributions. (*Id.* ¶ 29.) Participants vested in the WillScot contributions and earnings from them based on tenure with the employer, which typically

---

[3] WillScot attaches the Plan documents as Exhibits A through F (Doc. 14-1) to its motion to dismiss, which the Armenta consents for the Court to take judicial notice. (Doc. 18 at 3 n.2.) The Court will take judicial notice of these because they are incorporated by reference in Armenta's Complaint and not subject to reasonable dispute. *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 875 (D. Ariz. 2025) ("[U]nder the incorporation by reference doctrine, a district court may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." (citation modified)). Armenta also asks the Court to take judicial notice of the Plan's Form 5500 filed with the Department of Labor and a brief filed by the Department of Labor. (Doc. 18 at 3 n.2; Doc. 18-2.) The Court will take judicial notice of these exhibits because they are public documents, and the contents are not disputed. *See Sievert*, 780 F. Supp 3d at 875.

ranged from four to six years before becoming fully vested. (*Id.*)

If a Plan participant terminated employment with WillScot before becoming fully vested in the WillScot matching contributions, the participant forfeited the value of these contributions and any additional earnings from them (the "forfeitures"). (*Id.* ¶ 30.) These forfeitures were used by the Plan administrator to pay for both administrative expenses and to reduce WillScot's future matching contribution obligation. (*Id.* ¶ 30, 31.) The Plan documents govern the process for how the forfeitures were to be allocated.

Armenta alleges that WillScot, as the Plan administrator, breached its fiduciary duties outlined in ERISA and engaged in self-dealing and transactions prohibited by the statute by improperly allocating the forfeitures. (*Id.* ¶¶1-5.)

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A district court may dismiss claims lacking a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Sufficient factual allegations are those that, when taken as true, state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is more than mere possibility; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations "are taken as true and construed in the light most favorable to the [plaintiff]." *Cousins*, 568 F.3d at 1067.

## III.   DISCUSSION

WillScot moves to dismiss all five of Armenta's claims for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. (Doc. 14.) These claims arise out of alleged violations of Sections 1104 and 1106 of ERISA.

### A.   Counts I, II, III: Breach of Fiduciary Duties

Armenta alleges three separate causes of action under 29 U.S.C. § 1104(a)(1). She

alleges that WillScot breached its fiduciary duties of loyalty and prudence by allegedly violating subsections (a)(1)(A), (a)(1)(B), and (a)(1)(D).

The fiduciary duty of loyalty under ERISA requires WillScot to act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). ERISA requires that a fiduciary also discharge duties:

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> . . .
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a)(1). The Court addresses each subsection in the order it appears in the Complaint.

### i.     Count I: Violation of § 1104(a)(1)(D)

Armenta first alleges that WillScott breached "a fiduciary duty to act in accordance with the Plan documents and instruments governing the Plan," as required by § 1104(a)(1)(D). (Doc. 1 ¶ 88.) WillScot argues that this claim fails because the Plan permits WillScot actions and that Armenta's Complaint misrepresents the Plan's express terms. (Doc. 14 at 6.)

Armenta alleges that the Plan's documents required WillScot to use the forfeitures to pay for the administrative expenses before using them to reduce WillScot's required contributions. (*Id.* ¶ 89.) Specifically, she claims WillScot was to use forfeitures to pay for administrative expenses "and if 'any forfeitures [were] not used to pay administrative expenses under the Plan,' to then reduce WillScot's matching contribution obligation." (*Id.* ¶ 31.) Furthermore, she claims that "the Plan's summary plan description ('SPD') expressly states that [forfeitures] are 'retained in the Plan and may first be used to pay

administrative expenses" and that "any remaining amounts will be used to reduce future Employer contributions payable under the Plan." (*Id.* ¶ 32 (emphasis omitted).)

The Plan documents define the rights and obligations of the parties. *See U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) ("[ERISA's] statutory scheme . . . is built around reliance on the face of written plan documents.") (citation modified). "[T]erms in an ERISA plan should be interpreted in an ordinary and popular sense as would a [person] of average intelligence and experience." *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997). (citation omitted).

The Plan document terms, regarding the application of forfeitures:

> Any forfeitures occurring during a Plan Year *may* be used to pay administrative expenses under the Plan at any time, if so directed by the Administrator. Except as provided otherwise in the Adoption Agreement, any forfeitures not used to pay administrative expenses under the Plan shall be applied to reduce the contributions of the Employer for the immediately following Plan Year and held and applied in accordance with this Section 11.09.

(Doc. 14-1 at 109 (emphasis added).)

In *Collins v. Pension & Insurance Committee of Southern California Rock Products & Ready Mixed Concrete Associations*, 144 F.3d 1279 (9th Cir. 1998), the Ninth Circuit found that a plan's "permissive, not mandatory" language of "*may be* amended…by the Administrator" did not require the Plan to increase plan benefits. *Id.* at 1279 (emphasis added). Similarly, here, the Plan's use of "may" is permissive and "confers neither the power nor the obligation upon the Administration" to pay administrative expenses with forfeitures. *See id.*; (Doc. 14-1 at 109.) The use of the permissive word "may" in the Plan terms here means the administrator can pay administrative expenses using forfeitures but is not required to do so.

Armenta also alleges that the SPD supports a mandatory use of the forfeitures for administrative expenses. (Doc. 1 at ¶ 32.) The SPD provides: "Forfeitures are retained in the Plan and *may* first be used to pay administrative expenses. Any remaining amounts will

- 5 -

be used to reduce future Employer contributions payable under the Plan." (Doc. 14-1 at 149 (emphasis added).) Like the Plan terms, the SPD includes the permissive "may" language. Therefore, this document does not require the administrator to use the forfeitures for administrative expenses first.

In her response, Armenta agrees that the word "may" is permissive language. (Doc. 18 at 9 n.5.) She argues, however, that the language "any remaining forfeitures not used to pay administrative expenses," means that WillScot could only use the forfeitures for contributions *after* paying administrative expenses. (*Id.*) This interpretation goes against the plain language of the Plan documents, which provides the administrator with the discretion of reallocating forfeitures to either administrative expenses or contributions. Armenta further argues that, because she finds the Plan documents ambiguous, the Form 5500 supports her interpretation. (*Id.* at 8-11.) The Court, however, does not find the Plan terms ambiguous, and therefore, need not address the Form 5500 language.

Therefore, the Court finds that, construing the facts alleged in the light most favorable to Armenta, she failed to state a violation of § 1104(a)(1)(D), and as such, count I of Armenta's Complaint is dismissed.

### ii. Count II: Violation of § 1104(a)(1)(A)

Armenta alleges that WillScot breached its duty of loyalty by "failing to use [forfeitures] to defray the reasonable costs of administering the Plan or allocating them back to the accounts of eligible Plan participants." (Doc. 1 ¶ 95.) WillScot argues that its reallocation of forfeitures is permitted under ERISA and other regulations. (Doc. 14 at 9-11.) WillScot also argues that Armenta's theory is too broad to support a claim for breach of the duty of loyalty. (*Id.* at 11-12.)

"ERISA does not create an exclusive duty to maximize pecuniary benefits." *Collins*, 144 F.3d at 1282. "Instead, the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits." *Sievert*, 780 F. Supp. 3d at 877. Under the law, a plan administrator has the discretion "to use forfeited assets to decrease its own employer contributions under [a plan]." *Id.*; *see, e.g.*, 26 C.F.R. § 1.401-7 (providing

forfeitures be reallocated as employer contributions). Simply arguing that the defendant violated ERISA's duty of loyalty is not enough to establish a plausible claim. *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 923-26 (N.D. Cal. 2025) (appeal filed).

Armenta alleges that the forfeitures should be used "for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan." (Doc. 1 ¶ 36 (emphasis omitted).) She further alleges that WillScot did not offset administrative expenses "prior to" using the forfeitures to reduce WillScot's contributions to the Plan. (*Id.* ¶ 37 (emphasis omitted).)

As discussed, the Plan terms permit the administrator to reallocate forfeitures to both administrative expenses and plan contributions, and the order in which this reallocation occurs is not defined in the Plan terms. Armenta admits that WillScot used some forfeitures to offset some administrative expenses from 2019 through 2022, and that the forfeitures were also used to pay plan contributions. (*Id.* ¶¶ 39-60.)

The Court therefore finds that, construing the facts alleged in the light most favorable to Armenta, she failed to state a violation of § 1104(a)(1)(A), and as such, count II of Armenta's Complaint is dismissed.

### iii. Count III: Violation of § 1104(a)(1)(B)

Armenta alleges that WillScot violated its duty of prudence by "improperly exercising discretion and control" over the forfeitures by using an "imprudent and flawed process" because WillScot "failed to undertake any reasoned and impartial decision-making process" for reallocating the forfeitures to reduce "WillScot's own contribution expenses" instead of paying for administrative expenses. (Doc. 1 ¶¶ 102-03.) WillScot argues that Armenta does not provide factual support that WillScot breached a duty of prudence by engaging in a flawed process to allocate forfeitures. (Doc. 14 at 12-13.)

Under ERISA, fiduciaries owe a duty to act "with the care, skill, prudence, and diligence" of a "prudent man." 29 U.S.C. § 1104(a)(1)(B). A Plan's trustees' conflicts of interests can violate this requirement. *See Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401

(9th Cir. 1995) (citing cases). Many courts, however, including in this District, have found that this conflict of interest alone insufficient to breach the duty of prudence. *See, e.g.*, *Hutchins*, 767 F. Supp. 3d at 926 (finding that plaintiff's allegations that defendant's "used a flawed process in deciding how to allocate the forfeitures," without any specific facts, conclusory and insufficient); *Sievert*, 780 F. Supp. 3d at 878 (finding that where a plan's documents allowed for reallocation of forfeitures to reduce a defendant's own contributions does not violate a duty of prudence); *see also Leigh v. Engle*, 727 F.2d 113, 125 (7th Cir. 1984) ("Where the potential for conflicts is substantial, it may be virtually impossible for fiduciaries to discharge their duties with an eye to the interests of the beneficiaries, and the fiduciaries may need to step aside, at least temporarily, from the management of assets where they face potentially conflicting interests." (citation modified)); *Id.* at 132 n.29 ("[This] congruence alone would not demonstrate a breach of that duty to loyalty.").

Furthermore, "to find that Defendant's decision to use forfeited assets to reduce its own contributions is motivated by self-interest and violates its duties of loyalty or prudence would contravene decades of federal regulations suggesting that such a decision is entirely permissible." *Sievert*, 780 F. Supp. 3d at 878. The Treasury Department has issued long-standing reports and regulations that "indicate that forfeitures in defined contribution plans may be used to reduce future employer contributions." *Id.*

Here, like in *Hutchins* and in *Sievert*, Armenta only provides a general statement that WillScot violated the duty of prudence. She does not provide any specific facts about WillScot's alleged flawed processes when making decisions to reallocate forfeitures. (*See* Doc. 1.) In addition, it is undisputed that the forfeitures ultimately benefited plan participants because they were used to pay WillScot's contributions directly to plan participants and to offset some administrative expenses. (*See id.* ¶¶ 39-60.)

To be sure, "[t]o state a claim for breach of fiduciary duty, a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times." *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017). The complaint, however, should allege sufficient facts to allow a

court "to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Id.* Armenta's Complaint falls short of this requirement.

The Court therefore finds that, construing the facts alleged in the light most favorable to Armenta, she failed to state a violation of § 1104(a)(1)(B), and as such, count III of Armenta's Complaint is dismissed.

### B.  Counts IV, V: Prohibited Transactions

Armenta alleges two separate causes of action under 29 U.S.C. § 1106. Specifically, she alleges that WillScot violated subsections (a)(1) and (b)(1) when it reallocated forfeitures toward offsetting WillScot's contributions. (Doc. 1 ¶¶ 108-18.) WillScot argues that its forfeiture reallocations are not "transactions" under § 1106. (Doc. 14 at 13-14.)

Under § 1106,

> (a) Transactions between plan and party in interest . . .
> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
>> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>> (B) lending of money or other extension of credit between the plan and a party in interest;
>> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
>> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.
>                . . .
> (b) Transactions between plan and fiduciary
> A fiduciary with respect to a plan shall not—
> (1) deal with the assets of the plan in his own interest or for his own account . . . .

This statute is designed to prohibit "commercial bargains" that "are potentially harmful to the plan" "because they are struck with plan insiders, presumably not at arm's length."

- 9 -

*Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). "To allege a violation of § 1106, a plaintiff must allege an unlawful transaction." *Sievert*, 780 F. Supp. 3d at 880. An "incidental benefit" to an employer alone does not usually constitute a breach. *Id.*

Here, Armenta alleges that an unlawful transaction occurred when WillScot used the forfeitures to offset plan contributions. (Doc. 1 ¶¶ 110, 115-16.) This transaction, however, is not an unlawful transaction under § 1106. *See Sievert*, 780 F. Supp. 3d at 880 (finding reallocation of forfeitures for employer contributions not an unlawful transaction); *Hutchins*, 767 F. Supp. 3d at 928 (same); *Dimou v. Thermo Fisher Sci. Inc.*, No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *10 (S.D. Cal. Sept. 19, 2024) (same).

Like the defendants in *Sievert*, *Hutchins*, and *Dimou*, WillScot reallocates plan assets to provide current participants employer matching contributions. This transaction follows the Plan's documents and is not unlawful. *See, e.g.*, *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (concluding an employer's decision to hold a portion of a plan's assets in employer stock was not a "transaction," but "merely a lawful decision to remain in full compliance with the explicit language of the Plan's terms"). At best, paying employer contributions with forfeitures may provide an "incidental benefit" to WillScot. The forfeited assets, however, also provide a benefit to plan participants both in the form of contributions and by covering some administrative expenses.

The Court therefore finds that, construing the facts alleged in the light most favorable to Armenta, she failed to state a violation of § 1106, and as such, count IV and count V of Armenta's Complaint are dismissed.

**IV.   LEAVE TO AMEND**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely granted "when justice so requires." Leave to amend is not available, however, where amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

WillScot's motion ask the Court to dismiss Armenta's Complaint with prejudice. (Doc. 14). Armenta does not request leave to amend her Complaint. (*See* Doc. 18.) The Court has made its own assessment as to whether leave to amend would be appropriate and

reaches the following conclusions.

The Court finds dismissal with prejudice proper for counts I, II, IV, and V because these claims fail as a matter of law, rather than for a pleading deficiency. As discussed, counts I and II fail here because the Plan terms and the law allow WillScot to reallocate forfeitures for plan contributions. Counts IV and V fail because the law supports that reallocation of forfeitures in this instance does not qualify as a prohibited transaction.

The Court finds, however, that providing leave to amend for count III proper because Armenta could plausibly amend her complaint to allege facts for the Court "to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Terraza*, 241 F. Supp. 3d at 1070.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED granting in part and denying in part** Defendant's motion to dismiss (Doc. 14). Counts I, II, IV, and V of Armenta's Complaint (Doc. 1) are dismissed with prejudice. Armenta may file an amended complaint for count III (Doc. 1 ¶¶ 100-07) no later than fourteen (14) days from the date of this Order.

**IT IS FURTHER ORDERED** that if no amended complaint is filed by **September 30, 2025**, the Clerk of Court shall dismiss this action without further notice to Armenta or order of this Court.

Dated this 15th day of September, 2025.

Michael T. Liburdi
United States District Judge