**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ariel Armenta, | No. CV-25-00407-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| WillScot Mobile Mini Holdings Corporation, et al., | |
| Defendants. | |

A plan administrator does not breach the duty of prudence by exercising discretion permitted by the plan and the Employee Retirement Income Security Act. Before the Court is the Defendant's Motion to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 29.) The Motion is fully briefed. (Docs. 30, 31.) The Court will grant the Motion.

**I.     BACKGROUND**

The following facts are taken from the Amended Complaint. (Doc. 26.) The Court accepts these allegations as true for this motion to dismiss. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

WillScot is an employer that sponsors and administers a defined contribution retirement plan for its employees (the "Plan"). (Doc. 26 ¶¶ 8, 16.) The Plan incurs administrative expenses for services such as recordkeeping, accounting, and legal services. (*Id.* ¶ 73.) Participants fund the Plan through payroll deductions, and WillScot provides matching contributions. (*Id.* ¶ 75.) Plan participants are immediately vested into their own

contributions and any earnings from their contributions. (*Id.* ¶ 81.) Participants become fully vested in the WillScot matching contributions after a long enough tenure with WillScot, which typically ranges from four to six years. (*See id.*)

If a Plan participant terminates employment with WillScot before becoming fully vested, the participant forfeits the matching contributions and any earnings from those contributions. (*Id.* ¶ 82.) Under the terms of the Plan, the plan administrator has discretion to use these forfeitures to pay for administrative expenses or reduce WillScot's future matching contribution obligations. (*Id.* ¶¶ 83-84.) Specifically, as alleged in the Complaint, the Plan document states,

> Any forfeitures occurring during a Plan Year may be used to pay administrative expenses under the Plan at any time, if so directed by the Administrator. . . . [A]ny forfeitures not used to pay administrative expenses under the Plan shall be applied to reduce the contributions of the Employer for the immediately following Plan Year . . . .

(*Id.* ¶ 83.)

Plaintiff Ariel Armenta commenced this action because WillScot "consistently used Forfeited Plan Assets to almost exclusively reduce WillScot's contractually obligated contributions to the Plan and not to defray Administrative Expenses." (*Id.* ¶ 87.)

Armenta's original Complaint contained five causes of action. (Doc. 1 at 15-21.) The Court dismissed four of these counts with prejudice and dismissed one with leave to amend. (Doc. 25 at 11.) For the surviving count, the Court noted that Armenta's Amended Complaint must "allege facts for the Court 'to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed.'" (*Id.* (quoting *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017)).).

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "if

there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citation modified).

A complaint must assert sufficient factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility is more than a mere possibility; a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins*, 568 F.3d at 1067.

## III.    DISCUSSION

Armenta's only remaining claim is a breach of the duty of prudence under the Employee Retirement Income Security Act ("ERISA"). (Doc. 26 at 28-30.) In her Amended Complaint, Armenta was required to allege facts showing that the fiduciary's decision-making process was flawed. (Doc. 25 at 11.)

ERISA governs the administration of employee benefit plans and protects the interests of plan participants and their beneficiaries with uniform guidelines and rules. *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111 (9th Cir. 2006). "The two most basic components of any ERISA plan are the plan administrator and the plan documents." *Id.*

Under ERISA, plan administrators are fiduciaries who have a duty to act "with the care, skill, prudence, and diligence" of a "prudent man." 29 U.S.C. § 1104(a)(1)(B). In fulfilling this duty, a fiduciary must act for the exclusive purpose of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." *Id.* § 1104(a)(1)(A). Fiduciaries must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. *Id.* § 1104(a)(1)(D).

This duty is not "an exclusive duty to maximize pecuniary benefits." *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 877 (D. Ariz. 2025) (quoting

*Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004)). Rather, "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits." *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 924 (N.D. Cal. 2025). Ultimately, "the prudence analysis focuses on a fiduciary's conduct in arriving at an investment decision, not on its results." *Terraza*, 241 F. Supp. 3d at 1069 (citation modified).

Armenta has alleged no new facts to plausibly allege that the plan administrator's decision-making process was flawed in violation of the duty of prudence. Instead, she revives failed arguments from the first motion to dismiss: that the decision-making process was flawed because (1) the administrator should have first used the funds to defray administrative expenses, and (2) a conflict of interest plagued the process.

### A.    Use of Forfeited Assets

First, Armenta alleges that a prudent administrator would ensure "that Forfeited Plan Assets would be used first to defray plan expenses prior to being used to reduce employer contributions." (*See* Doc. 26 ¶¶ 62, 116.) Then, to show a breach of the duty of prudence, Armenta's Complaint lists how the plan administrator used forfeited assets to offset employer contributions prior to defraying administrative expenses each year. (*See id.* ¶¶ 87-114.)

The Plan, however, gives the plan administrator discretion to use forfeited funds to reduce administrative expenses or reduce WillScot's matching contributions. (*Id.* ¶¶ 83-84.) It does not require that the funds be used in a particular order. Moreover, ERISA permits plan administrators to use forfeited funds to offset the employer's matching contributions. *See Sievert*, 780 F. Supp. 3d at 878 ("To find that Defendant's decision to use forfeited assets to reduce its own contributions is motivated by self-interest and violates its [duty of prudence] would contravene decades of federal regulations suggesting that such a decision is entirely permissible."); *Hutchins*, 767 F. Supp. 3d at 923 (disagreeing with Plaintiff's proposition that ERISA's plan administrator duties "abrogate[] these long-settled rules regarding the use of forfeitures in defined contribution plans").

- 4 -

The plan administrator's use of forfeited contributions is consistent with the Plan and ERISA. WillScot's decision-making process does not automatically become flawed merely because it exercises its discretion in a manner Armenta disapproves. For this claim to proceed, Armenta must at least allege "circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Terraza*, 241 F. Supp. 3d at 1070. Disagreeing with the final decision, rather than alleging flaws in the process leading up to that decision, does not satisfy the pleading standards. *See id.* at 1069.

### B.    Conflict of Interest

Armenta also alleges that the administrator's decision-making process was flawed because of a conflict of interest. (Doc. 26 ¶ 68.) Armenta contends that "[t]he only reasonable explanation" for using the forfeitures primarily to reduce WillScot's matching contributions "is that the Fiduciaries discharged their duties considering the best interests of WillScot as opposed to in the interest of the participants and beneficiaries." (*Id.*)

Certainly, a fiduciary's conflict of interest can violate the duty of prudence. *See Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995). This Court, however, has already found that a conflict of interest cannot, on its own, establish a breach of that duty. (*See* Doc. 25 at 8 (collecting cases supporting this conclusion).) Armenta's allegation of a conflict is entirely conclusory and rests solely on her disagreement with the plan administrator's discretionary decision. That is insufficient. *See Sievert*, 780 F. Supp. 3d at 878, 881 (dismissing a duty of prudence breach claim that alleged a conflict of interest existed merely because the fiduciary allocated forfeitures toward employer matching contributions before defraying administrative expenses).

Instead of pleading specific instances in WillScot's decision-making process that were compromised by a conflict of interest, Armenta proposes a new theory: "A prudent fiduciary acting exclusively in the best interest of the participants would only choose not to offset plan expenses to the extent that there is concern that WillScot would otherwise be unable to meet its future contribution obligations." (Doc. 26 ¶ 124.) According to Armenta, if WillScot instead allocates forfeited assets toward matching contributions, that decision

is plagued by a conflict of interest. (*See id.* ¶¶ 117, 120, 142.)

This theory is contradicted by the very facts Armenta alleges: "it is undisputed that the forfeitures ultimately benefited plan participants because they were used to pay WillScot's contributions directly to plan participants and to offset some administrative expenses." (Doc. 25 at 8.) That was true of the original Complaint and remains true here. The administrator's use of forfeited funds to offset matching contributions is permitted by both the Plan and ERISA and does not plausibly suggest self-dealing or a flawed process. *See Sievert*, 780 F. Supp. 3d at 878. It instead reflects an allocation consistent with the duty of prudence because it "ensures that participants [receive] their promised benefits." *Hutchins*, 767 F. Supp. 3d at 924. Here, plan participants received their contributions, WillScot's matching contributions upon completing the vesting schedule, and occasional forfeiture allocations which offset their administrative expenses. (Doc. 26 ¶¶ 81, 114.) Armenta does not plausibly allege a conflict of interest that would establish a breach of the duty of prudence.

Finally, the Court is aware of the many cases that both parties have cited and discussed in their notices of supplemental authority. (*See* Docs. 35-36, 38-41.) Many of these cases are inapposite to the present dispute because their plan language is more restrictive of the fiduciary's discretion. *See, e.g.*, *Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 WL 194772, at *1 (N.D. Ill. Jan. 26, 2026) (analyzing plan document language stating that "Forfeiture Account amounts shall be utilized to pay reasonable administrative expenses of the Plan . . . and then . . . offset Company Contributions . . . ."). Furthermore, none of the cases cited are binding precedent on this Court, and they are unpersuasive for the Court's determination.

Armenta's breach of the duty of prudence claim does not contain sufficient factual allegations plausibly showing that the fiduciary's decision-making process was flawed. (*See* Doc. 25 at 11.) Nonetheless, in an attempt to survive the motion to dismiss, Armenta states that if "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible*, plaintiff's complaint survives a

motion to dismiss under Rule 12(b)(6)." (Doc. 30 at 2 (emphasis added) (quoting *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022)).) Here, however, Armenta's Complaint does not plausibly allege a breach of the duty of prudence. The Complaint will therefore be dismissed.

## IV. LEAVE TO AMEND

"Rule 15 advises the court that leave [to amend] shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation modified). Nevertheless, "liberality in granting leave to amend is subject to several limitations." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Id.* Further, "when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)).

Armenta's breach of the duty of prudence claim under ERISA will be dismissed with prejudice. Armenta was previously given the opportunity to cure her pleading defects, (*see* Doc. 25 at 11), but failed to do so. Because Armenta's Amended Complaint failed to allege facts showing a flawed decision-making process, a Second Amended Complaint would be futile and cause undue delay.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendant's Motion to Dismiss (Doc. 29). Plaintiff's Complaint (Doc. 26) is dismissed with prejudice.

**IT IS FURTHER ORDERED denying** oral argument on Defendant's Motion to Dismiss (Doc. 29). The Court finds oral argument unnecessary for resolution of the matter. *See* LRCiv. 7.2(f).

. . . .

- 7 -

**IT IS FINALLY ORDERED** directing the Clerk of Court to dismiss with prejudice this action and close this case.

Dated this 30th day of March, 2026.

Michael T. Liburdi
United States District Judge